Dear Ms. Livingston:
You have written us and asked that we reconsider Opinion No. 03-0027 in light of the anomalies that could under a program of buying, selling, and trading accrued compensatory leave. Your letter explains these anomalies so well, we will take the liberty to quote your explanation:
 "In Opinion No. 03-0027, you advised that Mayor Tregle from Morgan City ask whether or not fire and police employees in the Municipal Fire and Police Civil Service system should be allowed to buy, sell, or trade compensatory time that they have earned if they are the same ran, and if allowed, what rules or guidelines should be implemented to meet auditing standards.
 "In the response, you advised that `. . . whether to allow such buying, selling, and trading of accrued compensatory leave is up to the local civil service board, which if it does allow this activity, must adopt rules to define the practice, outline the conditions for its use, and define how much compensatory leave may be bought, sold, or traded within a given time.' We agree that the local civil service board is the appropriate entity to adopt rules governing leave as provided by LRS 33:2557. However, we must respectfully ask that your opinion to allow such practices if adopted by local civil service boards be considered in light of LRS 14:138(A)(2), which provides that the public payroll fraud is committed when:
 "(2) Any public officer or public employee shall carry, cause to be carried, or permit to be carried, directly or indirectly, upon the employment list or payroll of his office, the name of any person as employee, or shall pay any employee, with knowledge that such employee is receiving payment or compensation for services not actually rendered by said employee or for services grossly inadequate for such payment or compensation.
 "The related exception to the above cited law is found in LRS 14:138(B)(2), which provides that the above prohibition shall not apply:
 "(2) When arrangements between firefighters to swap work or perform substitute work with or for each other is done in compliance with the provisions of the federal Fair Labor Standards Act, 29 U.S.C. § 207(P)(3) and the associated regulations found in the Code of Federal Regulations and in accordance with rules and regulations adopted by the appointed authority.
 "The practice of `swapping time' has been generally accepted in the fire service for many years, but we see this as a different issue than the relatively broad permissions granted by Opinion 03-0027. We see a difference between one employee working a shift for another, and the transfer of compensatory hours and the corresponding financial obligation form one employee to another. Due to longevity increased, fire employees, even of the same rank, may make different rates of pay. If the base pay for all employees in the class of Fire Driver is $1,500 per month (and what a newly promoted Fire Driver might be making, for example), a Fire Driver who has been in the class for seven years and who has had the benefit of seven years of 2% increases would be making approximately $1,728 per month. Some jurisdictions also have pay incentives which provide an additional supplement for items such as EMT certifications and attaining certain education levels. Some employees may qualify for the incentives, and some may not. When an employee works overtime and earns compensatory time, a financial obligation to pay the employee is crated for the employing entity. What we have been advised has happened is that higher paid employees have `brought' compensatory time form less experienced, lower paid employees. The lower paid employees have even sold compensatory time for less money that they earn per hour as a means of developing extra income. The financial obligation of the jurisdiction which was created when the compensatory time was earned by the lower paid employee with less experience may end up being satisfied by allowing a higher paid employee to take off. A higher paid employee of the same rank may buy up compensatory time from lower paid employees in preparation for resigning to take another job. Once the employee resigns, and compensatory time on the record should be paid to the employee upon his separation. In this case, the employees are allowed to change the financial obligation of the city through this transaction of crediting one employee with time earned by another. A corresponding problem would be that the employee who `brought' the compensatory time and who subsequently resigned and received payment for the purchased compensatory hours would, in fact, be receiving dual compensation for part of the time he was employed.
 "We find this concept problematic from both a legal and an accounting standpoint, and respectfully request that Opinion No. 03-0027 be reconsidered."
When we referred to "same rank" in our opinion, we were following the requestor's condition. Obviously, what we meant was that the leave had to have the same value in the acquisitor as it had in the person from whom it was acquired, so that the obligation that it represents does not change in value because of the rank, status, longevity, or qualifications of the person who acquires it. If a payment is made of it, the payment could then be viewed as simply reimbursement for what the acquisitor paid for it; nevertheless, we think the main purpose for which a local civil service board would approve such transactions would not be for payment but rather for actually taking the time off for family vacations and such.
Indeed, the whole thrust of our opinion is to answer what entity had the power to approve such transactions. Whether to allow the buying, selling, and trading of accrued compensatory leave is up to the civil service board, which, if it does allow this activity, must adopt rules to define the practice, outline the conditions for its use, and define how much compensatory leave may be bought, sold, or traded within a given time. Every question raised by your request for reconsideration of our opinion must be considered by the local civil service boards. They may decide to not allow the practice at all. They may decide to allow it but only in certain narrow conditions and circumstances. But if they do allow it at all, they must adopt rules to govern the manner and conditions in which it may be done so as to prevent any other violation of law and to avoid the problems you have pointed out.
Trusting this opinion has adequately answered your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 By ___________________________ THOMAS S. HALLIGAN Assistant Attorney General
cc: Hon. Tim J. Tregle, Mayor (Morgan City)
OPINION NUMBER 03-0178
April 30, 2003
61 LAWS General
The phrase "except as otherwise provided" in ordinance is designed to incorporate exceptions contained elsewhere in the municipal ordinances or state law which would specifically permit prohibited activity.
Honorable Henry "Tank" Powell State Representative P.O. Box 1109 Ponchatoula, LA 70454
Dear Representative Powell:
You have asked this office to interpret the following provision of Ponchatoula Zoning Ordinance 495 which states:
 Mobile homes may not be located on single-family lots, where other dwellings are already located on the same lot, except as otherwise provided.
The qualifying phrase "except as otherwise provided" is designed to incorporate into Ordinance 495 exceptions contained elsewhere in the municipal ordinances or state law which would specifically permit mobile homes to be located on single-family lots. See Board of Commissioners ofOrleans Levee District vs. Department of Natural Resources, 483 So.2d 958
(La. 1986), at page 962. The phrase does not mean that the prohibition contained in the ordinance can be altered privately at will.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _______________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
Date Released: April 30, 2003